UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| TRA BI JEAN,<br><br>                    Petitioner,<br><br>        v.<br><br>PAMELA BONDI, et al.,<br><br>                    Respondents. | Case No. 2:25-cv-02487<br><br>EX PARTE TEMPORARY RESTRAINING ORDER |

## I.    ORDER

On December 5, 2025, Petitioner filed a petition for writ of habeas corpus, alleging that Respondents violated the Immigration and Nationality Act ("INA") by subjecting him to mandatory detention at the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") under 8 U.S.C. § 1225(b)(2). Dkt. 1 ¶¶ 25–30.

Petitioner moves for an *ex parte* temporary restraining order ("TRO") enjoining Respondents from transferring him out of NWIPC during the habeas proceedings. Dkt. 2. The Court finds that Petitioner has established a likelihood of success on the merits of his underlying habeas petition and has shown a likelihood of irreparable harm from denial of access to counsel if he is transferred from this district during the pendency of his habeas petition. Dkt. 2 at 5. Petitioner has further provided specific facts showing that this irreparable harm is imminent and

likely to happen before Respondents can be heard in opposition to this motion. The Court therefore GRANTS Petitioner's Motion for TRO.

Petitioner argues that a TRO is warranted because (1) he is likely to succeed on the merits of his habeas petition; (2) he faces irreparable harm absent the requested relief; and (3) the balance of equities and the public interest weighs in his favor. Dkt. 2 at 3. This Court agrees.

A federal district court "may issue all writs necessary or appropriate in aid of [its] . . . jurisdiction[] and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). A court "has the inherent authority and responsibility to protect the integrity of its proceedings which [are] undoubtedly impacted" when a habeas petitioner is transferred to a detention facility outside of the district. *Ozturk v. Trump*, 779 F. Supp. 3d 462, 496 (D. Vt. 2025), *amended sub nom. Ozturk v. Hyde*, 136 F.4th 382 (2d Cir. 2025). Under this authority, a court may order injunctive relief prohibiting the government from transferring a petitioner out of the district while habeas corpus proceedings are ongoing. *See Oliveros v. Kaiser*, No. 25-CV-07117-BLF, 2025 WL 2677125, at *8–9 (N.D. Cal. Sept. 18, 2025). Section 1231(g) does not preclude courts' inherent authority to issue such orders. *See Ozturk*, 136 F.4th at 395–96 (determining that the government was unlikely to succeed on its argument that judicial review was precluded under § 1231(g)); *see also Reyna ex rel J.F.G. v. Hott*, 921 F.3d 204, 209 (4th Cir. 2019) ("[T]he language of § 1231(g) does not address transfers at all, nor does it explicitly grant the Attorney General or the Secretary of Homeland Security discretion with respect to transfers.").

Moreover, a party seeking a TRO "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *United States v. City of Seattle*, 474 F. Supp. 3d 1181, 1185 (W.D. Wash. 2020) ("The standard for issuing a TRO is the same as the standard

for issuing a preliminary injunction."). When a party seeks a TRO against the government, the third and fourth factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). In the Ninth Circuit, a party may also obtain a TRO by demonstrating "'serious questions going to the merits' and a balance of hardships that tips sharply" in the party's favor, so long as the party also shows "that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)); *City of Seattle*, 474 F. Supp. 3d at 1185–87 (applying the "serious questions" standard to a request for a TRO).

First, the Court finds that Petitioner has shown a likelihood of success on the merits. Petitioner alleges he is entitled to relief under *Maldonado Bautista v. Santacruz*, No. 5:25- CV-01873-SSS-BFM, --- F. Supp. 3d ----, 2025 WL 3289861, at *11 (C.D. Cal. Nov. 20, 2025). In *Maldonado Bautista*, the district court granted partial summary judgment relief to members of a Bond Denial Class, holding that members of that class are detained under 8 U.S.C. § 1226(a), and thus are not subject to mandatory detention under § 1225(b)(2). *Id*. at *10–11. Petitioner has shown that he is likely a member of the Bond Denial Class because he (1) was apprehended by immigration authorities on November 21, 2025; (2) entered the United States over 20 years ago and was not apprehended upon arrival; and (3) is not detained under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231. Dkt. 1 at 3. As part of the class, Petitioner is entitled to consideration for release on bond under 8 U.S.C. § 1226(a) and denial of consideration violates the INA.

Second, Petitioner has demonstrated a likelihood of irreparable harm and that the balance of hardships tips sharply in his favor, as transfer to detention facilities outside of the Western District of Washington would impede his ability to communicate with counsel and participate in bond hearings. Dkt. 2 at 5; *see L.A.E. v. Wamsley*, No. 3:25-CV-01975-AN, 2025 WL 3037856,

at *5 (D. Or. Oct. 30, 2025) ("Given the labyrinthine nature of immigration law and the harms of an erroneous deportation, abridging access to legal representation in the context of removal proceedings is a particularly concrete and irreparable harm."); *Arroyo v. U.S. Dep't of Homeland Sec.*, No. SACV19815JGBSHKX, 2019 WL 2912848, at *22 (C.D. Cal. June 20, 2019) (concluding that transferring detainees to new immigration facilities would cause irreparable harm by burdening detainees' ability to interact with retained counsel). Petitioner's counsel submitted a declaration stating that Petitioner's commissary account was emptied and attested to "a pattern of accounts being drained when a removal, transfer, or release is set to occur within the next 24 hours." Dkt. 1-2 at 2. These are sufficiently specific facts to show that the irreparable harm of transfer is imminent and likely to occur before Respondents can be heard in opposition to the motion. *See* Fed. R. Civ. P. 65(b)(1).

Third, ensuring that Petitioner retains access to counsel will facilitate the speedy resolution of the habeas proceedings. *See Oliveros*, No. 25-CV-07117-BLF, 2025 WL 2677125, at *8–9 ("Here, the Court finds that equities strongly favor Petitioner remaining in this District pending the resolution of this matter because this will expedite resolution of this matter, provide Petitioner ready access to medical and legal services, and address concerns about the conditions of her detention."). Keeping Petitioner at NWIPC is also consistent with the Immigration and Customs Enforcement ("ICE") Detainee Transfers Directive No. 11022.1, which states that "[u]nless a transfer is deemed necessary by a [Field Office Director] or his or her designee," ICE "will not transfer a detainee when there is documentation to support," among other things, "[i]mmediate family within the [Area of Responsibility]" or "[a]n attorney of record . . . within the [Area of Responsibility.]" *Arroyo*, No. SACV-19815-JGBSHKX, 2019 WL 2912848, at *3; *see also* Dkt. 15 at 2 (citing U.S. Immigration and Customs Enforcement, Performance-Based National Detention Standards 2011 (rev. 2016), *available at*

EX PARTE TEMPORARY RESTRAINING ORDER - 4

https://www.ice.gov/doclib/detentionstandards/2011/pbnds2011r2016.pdf, which in turn states that "[d]ecisions to transfer detainees are made . . . on the basis of complete and accurate case information and principles set forth in the ICE/ERO Detainee Transfers Directive and other applicable ICE/ERO policies"); ICE/ERO Detainee Transfers Directive at 2, *available at* https://www.ice.gov/doclib/foia/policy/11022.1_DetaineeTransfers.pdf.).

If circumstances change, Respondents can seek a modification of this Order. Therefore, the Court concludes that a TRO prohibiting the transfer of Petitioner out of NWIPC is warranted to protect the integrity of these habeas proceedings and GRANTS the motion for TRO.

Accordingly, the Court orders as follows:

1. Petitioner's motion for a temporary restraining order (Dkt. 2) is GRANTED.
2. Respondents, including their officers, agents, servants, employees, attorneys, or others acting on their behalf, are PROHIBITED from transferring Petitioner from the Northwest Immigration and Customs Enforcement Processing Center to any other facility during the pendency of these proceedings unless they seek modification of this Order or there is a final, executable removal order for Petitioner.
3. This ex parte Order expires December 19, 2025 unless extended by this Court. Fed. R. Civ. P. 65(b)(2). If Petitioner seeks to convert this temporary order into a preliminary injunction lasting for the duration of the litigation, Petitioner shall file a motion seeking such conversion no later than December 15, 2025 and shall confer with opposing counsel on a briefing schedule.
4. The Court finds that no bond is necessary under Federal Rule of Civil Procedure 65(c).
5. Petitioner's counsel shall immediately serve a copy of the habeas petition and this Order on the United States Attorney's Office by emailing a copy of both documents

EX PARTE TEMPORARY RESTRAINING ORDER - 5

to USAWAW.ImmigrationHabeasService@usdoj.gov and

usawaw.habeas@usdoj.gov.

Dated this 5th day of December, 2025.

_____
Tiffany M. Cartwright
United States District Judge